DECISION *Page 2 
{¶ 1} Defendant-appellant Christine Weable was arrested on March 10, 2006, for operating a motor vehicle while intoxicated in violation of R.C. 45911.19(A)(1)(a) ("OMVI"). She was also cited for a marked-lanes violation under R.C. 4511.33. Weable filed a motion to suppress the state's evidence against her, which the trial court denied after a full hearing on the merits. Weable's case was then tried to a jury.
 {¶ 2} At trial, the state presented testimony from Charles O'Bryon, an Ohio State Highway Patrol Trooper who was in uniform and on duty in a marked police cruiser, on the morning of March 10, 2006. At approximately 2:05 a.m., Trooper O'Bryon saw a vehicle turning left from Mason Road into the eastbound lane of Montgomery Road. A second vehicle followed closely. Trooper O'Bryon watched as the first vehicle, which was driven by Weable, drifted over the white line of the right side of the road "about a half a car length." Trooper O'Bryon continued to watch this vehicle. He saw it drift outside the lane a second time.
 {¶ 3} Weable's vehicle then turned right from Montgomery Road onto Enyart Road. Trooper O'Bryon, who was now following Weable's vehicle, saw Weable "oversteer" the turn and drift off the right side of the road. Weable then corrected, and the vehicle came back on the roadway. At this point, Trooper O'Bryon decided to stop the vehicle for the marked-lanes violations. He activated his lights. Weable's vehicle and a second vehicle pulled over. As Trooper O'Bryon pulled behind Weable's vehicle, the second vehicle drove away.
 {¶ 4} Trooper O'Bryon contacted his patrol post and then approached the vehicle. The driver's window was open, and Trooper O'Bryon immediately noticed a *Page 3 
strong odor of alcohol coming from within the vehicle. A man was sitting in the front passenger seat of the vehicle. Weable told Trooper O'Bryon that she was taking the man home from a bar because he was too intoxicated to drive. Because the passenger was significantly impaired, Trooper O'Bryon asked Weable to get out of the vehicle so he could determine where the odor of alcohol was coming from.
 {¶ 5} When Trooper O'Bryon spoke with Weable outside the vehicle, he could smell a strong odor of alcohol emanating from her. He asked Weable for her driver's license and proof of insurance, which she provided. Trooper O'Bryon then explained and conducted three field sobriety tests: the horizontal gaze nystagmus test, the one-leg stand, and the walk-and-turn test. Trooper O'Bryon conducted the horizontal gaze nystagmus test twice for each eye and observed obvious jerking of both eyes. He detected four out of the six clues indicating impairment. He further described Weable's eyes as "glassy."
 {¶ 6} Trooper O'Bryon next explained and demonstrated the one-leg stand. Weable, however, interrupted him during the instructions, complaining about the wind. Although she attempted the test, she swayed back and forth, raised her arms for balance farther than instructed, and could not hold her foot up for more than five seconds. Instead, she hopped to try to keep from putting her foot down. Trooper O'Bryon testified that Weable showed four out of four clues indicating impairment.
 {¶ 7} Trooper O'Bryon then explained the walk-and-turn test. Weable moved her feet before the test began, could not touch one heel to her opposing toe, and lost her balance while making the turn. Trooper O'Bryon testified that the results of her performance indicated four out of eight impairment clues. He also testified that, at least once during the testing, Weable's speech was slurred. *Page 4 
 {¶ 8} O'Bryon testified that Weable's performance on the tests, when combined with his other observations, led him to the opinion that Weable had been driving the vehicle while noticeably impaired by alcohol. Weable's passenger was being disruptive, so O'Bryon placed Weable in the back of his cruiser, secured their car, and then drove Weable and the passenger to the passenger's home. O'Bryon then drove Weable to the Ohio Highway Patrol Post in Lebanon. Although Weable was offered a breath-alcohol test and informed of the legal consequences of refusing to take it, she declined the test.
 {¶ 9} During cross-examination of Trooper O'Bryon, defense counsel played a DVD showing Trooper O'Bryon and Weable during the initial stop and as they walked to the side of the cruiser. But the field-sobriety testing was done out of view of the camera. And while some of their conversation could be heard, the sound quality was poor. This DVD was admitted into evidence. Weable did not present any witnesses at trial, and she did not testify.
 {¶ 10} The jury found Weable guilty as charged. The trial court sentenced Weable to 180 days in jail. The trial court then suspended 174 days and ordered Weable to serve three days in jail and three days in a driver-intervention program. The trial court also placed Weable on community control for one year, with limited driving privileges, and ordered her to pay a $ 300 fine and court costs.
 {¶ 11} Shortly thereafter, Weable's counsel filed a motion to reconsider her sentence. At a hearing on the motion, counsel also asked the trial court for an "Entry of Dismissal" based upon a violation of Weable's speedy-trial rights. The trial court refused to address Weable's speedy-trial claim on the ground that her impending appeal had denied it jurisdiction over that claim. Weable then requested a stay of *Page 5 
her sentence pending this appeal, which the trial court granted. She now raises three assignments of error for our review.
 {¶ 12} In her first assignment of error, Weable argues that she was denied the effective assistance of counsel, when her trial counsel failed to move for dismissal of her case prior to trial based upon a violation of her speedy-trial rights. The state contends, however, that because Weable was tried within the time limits for a misdemeanor charge, her counsel was not ineffective for failing to raise this issue prior to trial.
 {¶ 13} To prevail on her claim, Weable "must show that [her] trial counsel's representation fell below an objective standard of reasonableness"[1] and that she was prejudiced by counsel's deficient performance.[2] Prejudice is demonstrated by showing "that there is a reasonable probability that, but for * * * [the] errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[3]
Both elements must be present to demonstrate ineffective assistance of counsel.[4]
 {¶ 14} Weable was charged with OMVI, a first-degree misdemeanor, under R.C. 4511.19(A)(1). Thus, she was entitled to be tried within 90 days of her arrest, unless R.C. 2945.72 extended the time for trial.[5] R.C.2945.72(B) provides that the time for trial may be extended due to "any period of delay necessitated by reason of [1] a * * motion instituted by an accused, [2]* * * the period of any continuance granted upon the accused's own motion, and [3] the period of any reasonable continuance granted other than upon the accused's motion." R.C. 2945.72(C) further *Page 6 
provides that a continuance "necessitated by the accused's lack of counsel" is not counted against the state.[6]
 {¶ 15} Weable contends that 129 days chargeable to the state had passed before her trial began. Weable's brief and the state's brief agree on all the time chargeable to both the state and Weable, except with respect to the time from March 10, 2006, through May 11, 2006. Weable alleges in her brief that all 61 days during this period were chargeable to the state. The state argues, however, that Weable has failed to account for a number of continuances, and that when these continuances are taken into account, only 17 of the 61 days were chargeable to the state.
 {¶ 16} Based upon our review of the record, we agree with the state. The transcript of the docket reveals that Weable's counsel requested three separate continuances during this contested period: (1) from March 13, 2006, to March 27, 2006; (2) from April 10, 2006, to May 5, 2006; and (3) from May 5, 2006, to May 11, 2006. When these continuances are taken into account, only 17 days during this period were chargeable to the state.
 {¶ 17} Adding these 17 days to the 49 days from July 10, 2006, to August 28, 2006, and the 19 days from November 15, 2006, to December 4, 2006, which the parties agree were chargeable to the state, the total number of days chargeable to the state amounted to only 85. Because only 85 days chargeable to the state had elapsed from Weable's arrest on March 10, 2006, through the trial date of February 21, 2007, Weable's speedy-trial rights were not violated. As a result, her trial counsel did not perform deficiently by failing to file a motion to dismiss the charges based upon a speedy-trial violation. We, therefore, overrule her first assignment of error. *Page 7 
 {¶ 18} In her second and third assignments of error, Weable alleges that her convictions were based on insufficient evidence and were against the manifest weight of the evidence.
{¶ l9} When a defendant claims that her conviction is supported by insufficient evidence, this court must review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found all the elements of the crime proved beyond a reasonable doubt.[7]When addressing a manifest-weight claim, this court must review the record, weigh the evidence and all inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[8]
 {¶ 20} Although Weable was convicted of OMVI and a marked-lanes violation, she challenges only her conviction for OMVI. She claims that "to a lay[-] person, she looked fine," that the results of the field sobriety tests were undermined by gusty winds during the testing, and that she was tired.
 {¶ 21} Trooper O'Bryon, however, gave detailed testimony at trial about Weable's condition on the night of her arrest that effectively refuted each of these arguments. O'Bryon testified that Weable smelled of alcohol, had glassy eyes, slurred her speech at least once, and could not perform the field sobriety tests appropriately. The jury was free to weigh Trooper O'Bryon's testimony about Weable's appearance and performance on the tests and to determine his credibility.
 {¶ 22} And while Weable argues that the gusty winds affected her performance on the tests, Trooper O'Bryon testified that he did not have Weable *Page 8 
facing the wind during the horizontal gaze nystagmus test. Little disturbance from the wind is visible on the videotape. Whether the winds affected Weable's ability to listen to the directions, to follow them, and to hold her balance was, again, an issue for the jury to decide.
 {¶ 23} Weable finally maintains that the jury could have lost its way because discussions regarding the portable breath test ("PBT") were not redacted from the videotape. The record reveals that defense counsel made a tactical decision to leave these portions in the videotape, but successfully argued that the test results were inadmissible. Neither attorney mentioned the PBT in closing arguments. We cannot conclude, based on this record, that the unredacted portions of the tape caused the jury to lose its way, particularly in light of the state's other evidence against Weable.
 {¶ 24} Because the record contains sufficient evidence of each of the elements of OMVI and because we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that Weable's conviction must be reversed and a new trial ordered, we overrule Weable's second and third assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
HlLDEBRANDT and CUNNINGHAM, JJ., concur.
[1] Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
[2] Id. at 687.
[3] Id. at 694.
[4] Id. at 697.
[5] See R.C. 2945.71(B)(2).
[6] See State v. Salyers, 3rd Dist. No. 9-05-04, 2005-Ohio-5037, at ¶ 10.
[7] State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132.
[8] Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211. *Page 1